AF Approval ___NA___                     Chief Approval ___RH___

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

UNITED STATES OF AMERICA

v.                                   CASE NO. 6:20-cr-114-Orl-41LRH

STACY R. CARUVANA

### PLEA AGREEMENT

Pursuant to Fed. R. Crim. P. 11(c), the United States of America, by Karin Hoppmann, Acting United States Attorney for the Middle District of Florida, and the defendant, STACY R. CARUVANA, and the attorney for the defendant, Robert L. Tarver Jr., Esq., mutually agree as follows:

**A.    Particularized Terms**

1.    Count(s) Pleading To

The defendant shall enter a plea of guilty to Count Two of the Indictment. Count Two charges the defendant with knowingly making a false statement in a document intending to influence an investigation within the jurisdiction of a federal agency, in violation of 18 U.S.C. § 1519.

2.    Minimum and Maximum Penalties

Count Two carries a maximum sentence of 20 years' imprisonment, a maximum fine of $250,000, a term of supervised release of up to three years, and a special assessment of $100.

Defendant's Initials ___SC___

3.     Elements of the Offense

The defendant acknowledges understanding the nature and elements of the offense with which defendant has been charged and to which defendant is pleading guilty.

The elements of Count Two are:

First:     The defendant altered, concealed, covered up, or made a false entry in any record or document;

Second:    The defendant did so with the intent to impede, obstruct, or influence an investigation; and

Third:     The investigation was of a matter within the jurisdiction of a federal agency or department, or in relation to or contemplation of any such matter or case.

4.     Counts Dismissed

At the time of sentencing, the remaining counts against the defendant, Counts One, Three, and Four, will be dismissed pursuant to Fed. R. Crim. P. 11(c)(1)(A).

5.     No Further Charges

If the Court accepts this plea agreement, the United States Attorney's Office for the Middle District of Florida agrees not to charge defendant with committing any other federal criminal offenses known to the

Defendant's Initials           2

United States Attorney's Office at the time of the execution of this agreement, related to the conduct giving rise to this agreement.

6.    Guidelines Sentence

Pursuant to Fed. R. Crim. P. 11(c)(1)(B), the United States will recommend to the Court that the defendant be sentenced within the defendant's applicable guidelines range as determined by the Court pursuant to the United States Sentencing Guidelines, as adjusted by any departure the United States has agreed to recommend in this plea agreement.  The parties understand that such a recommendation is not binding on the Court and that, if it is not accepted by this Court, neither the United States nor the defendant will be allowed to withdraw from the plea agreement, and the defendant will not be allowed to withdraw from the plea of guilty.

7.    Acceptance of Responsibility - Three Levels

At the time of sentencing, and in the event that no adverse information is received suggesting such a recommendation to be unwarranted, the United States will recommend to the Court that the defendant receive a two-level downward adjustment for acceptance of responsibility, pursuant to USSG §3E1.1(a).  The defendant understands that this recommendation or request is not binding on the Court, and if not accepted by the Court, the defendant will not be allowed to withdraw from the plea.

Defendant's Initials _____        3

Further, at the time of sentencing, if the defendant's offense level prior to operation of subsection (a) is level 16 or greater, and if the defendant complies with the provisions of USSG §3E1.1(b) and all terms of this Plea Agreement, including but not limited to, the timely submission of the financial affidavit referenced in Paragraph B.5., the United States agrees to file a motion pursuant to USSG §3E1.1(b) for a downward adjustment of one additional level. The defendant understands that the determination as to whether the defendant has qualified for a downward adjustment of a third level for acceptance of responsibility rests solely with the United States Attorney for the Middle District of Florida, and the defendant agrees that the defendant cannot and will not challenge that determination, whether by appeal, collateral attack, or otherwise.

**B.**   **Standard Terms and Conditions**

1.   Restitution, Special Assessment and Fine

The defendant understands and agrees that the Court, in addition to or in lieu of any other penalty, shall order the defendant to make restitution to any victim of the offense(s), pursuant to 18 U.S.C. § 3663A, for all offenses described in 18 U.S.C. § 3663A(c)(1); and the Court may order the defendant to make restitution to any victim of the offense(s), pursuant to 18 U.S.C. § 3663, including restitution as to all counts charged, whether or not the

Defendant's Initials _____                    4

defendant enters a plea of guilty to such counts, and whether or not such counts are dismissed pursuant to this agreement.  The defendant further understands that compliance with any restitution payment plan imposed by the Court in no way precludes the United States from simultaneously pursuing other statutory remedies for collecting restitution (28 U.S.C. § 3003(b)(2)), including, but not limited to, garnishment and execution, pursuant to the Mandatory Victims Restitution Act, in order to ensure that the defendant's restitution obligation is satisfied.  On each count to which a plea of guilty is entered, the Court shall impose a special assessment pursuant to 18 U.S.C. § 3013.  The special assessment is due on the date of sentencing.

2. <u>Supervised Release</u>

The defendant understands that the offense(s) to which the defendant is pleading provide(s) for imposition of a term of supervised release upon release from imprisonment, and that, if the defendant should violate the conditions of release, the defendant would be subject to a further term of imprisonment.

3. <u>Immigration Consequences of Pleading Guilty</u>

The defendant has been advised and understands that, upon conviction, a defendant who is not a United States citizen may be removed

Defendant's Initials _____        5

from the United States, denied citizenship, and denied admission to the
United States in the future.

4.   Sentencing Information

The United States reserves its right and obligation to report to the
Court and the United States Probation Office all information concerning the
background, character, and conduct of the defendant, to provide relevant
factual information, including the totality of the defendant's criminal activities,
if any, not limited to the count(s) to which defendant pleads, to respond to
comments made by the defendant or defendant's counsel, and to correct any
misstatements or inaccuracies. The United States further reserves its right to
make any recommendations it deems appropriate regarding the disposition of
this case, subject to any limitations set forth herein, if any.

5.   Financial Disclosures

Pursuant to 18 U.S.C. § 3664(d)(3) and Fed. R. Crim. P.
32(d)(2)(A)(ii), the defendant agrees to complete and submit to the United
States Attorney's Office within 30 days of execution of this agreement an
affidavit reflecting the defendant's financial condition. The defendant
promises that her financial statement and disclosures will be complete,
accurate and truthful and will include all assets in which she has any interest
or over which the defendant exercises control, directly or indirectly, including

Defendant's Initials _____        6

those held by a spouse, dependent, nominee or other third party.  The
defendant further agrees to execute any documents requested by the United
States needed to obtain from any third parties any records of assets owned by
the defendant, directly or through a nominee, and, by the execution of this
Plea Agreement, consents to the release of the defendant's tax returns for the
previous five years.  The defendant similarly agrees and authorizes the United
States Attorney's Office to provide to, and obtain from, the United States
Probation Office, the financial affidavit, any of the defendant's federal, state,
and local tax returns, bank records and any other financial information
concerning the defendant, for the purpose of making any recommendations to
the Court and for collecting any assessments, fines, restitution, or forfeiture
ordered by the Court.  The defendant expressly authorizes the United States
Attorney's Office to obtain current credit reports in order to evaluate the
defendant's ability to satisfy any financial obligation imposed by the Court.

   6.   <u>Sentencing Recommendations</u>

          It is understood by the parties that the Court is neither a party to
nor bound by this agreement.  The Court may accept or reject the agreement,
or defer a decision until it has had an opportunity to consider the presentence
report prepared by the United States Probation Office.  The defendant
understands and acknowledges that, although the parties are permitted to

Defendant's Initials _____ *SC*                 7

make recommendations and present arguments to the Court, the sentence will be determined solely by the Court, with the assistance of the United States Probation Office. Defendant further understands and acknowledges that any discussions between defendant or defendant's attorney and the attorney or other agents for the government regarding any recommendations by the government are not binding on the Court and that, should any recommendations be rejected, defendant will not be permitted to withdraw defendant's plea pursuant to this plea agreement. The government expressly reserves the right to support and defend any decision that the Court may make with regard to the defendant's sentence, whether or not such decision is consistent with the government's recommendations contained herein.

7.  Defendant's Waiver of Right to Appeal the Sentence

The defendant agrees that this Court has jurisdiction and authority to impose any sentence up to the statutory maximum and expressly waives the right to appeal defendant's sentence on any ground, including the ground that the Court erred in determining the applicable guidelines range pursuant to the United States Sentencing Guidelines, except (a) the ground that the sentence exceeds the defendant's applicable guidelines range as determined by the Court pursuant to the United States Sentencing Guidelines; (b) the ground that the sentence exceeds the statutory maximum penalty; or (c)

Defendant's Initials _CC_                    8

the ground that the sentence violates the Eighth Amendment to the Constitution; provided, however, that if the government exercises its right to appeal the sentence imposed, as authorized by 18 U.S.C. § 3742(b), then the defendant is released from her waiver and may appeal the sentence as authorized by 18 U.S.C. § 3742(a).

8.   Middle District of Florida Agreement

It is further understood that this agreement is limited to the Office of the United States Attorney for the Middle District of Florida and cannot bind other federal, state, or local prosecuting authorities, although this office will bring defendant's cooperation, if any, to the attention of other prosecuting officers or others, if requested.

9.   Filing of Agreement

This agreement shall be presented to the Court, in open court or in camera, in whole or in part, upon a showing of good cause, and filed in this cause, at the time of defendant's entry of a plea of guilty pursuant hereto.

10.   Voluntariness

The defendant acknowledges that defendant is entering into this agreement and is pleading guilty freely and voluntarily without reliance upon any discussions between the attorney for the government and the defendant and defendant's attorney and without promise of benefit of any kind (other

Defendant's Initials _____ 9

than the concessions contained herein), and without threats, force, intimidation, or coercion of any kind. The defendant further acknowledges defendant's understanding of the nature of the offense or offenses to which defendant is pleading guilty and the elements thereof, including the penalties provided by law, and defendant's complete satisfaction with the representation and advice received from defendant's undersigned counsel (if any). The defendant also understands that defendant has the right to plead not guilty or to persist in that plea if it has already been made, and that defendant has the right to be tried by a jury with the assistance of counsel, the right to confront and cross-examine the witnesses against defendant, the right against compulsory self-incrimination, and the right to compulsory process for the attendance of witnesses to testify in defendant's defense; but, by pleading guilty, defendant waives or gives up those rights and there will be no trial. The defendant further understands that if defendant pleads guilty, the Court may ask defendant questions about the offense or offenses to which defendant pleaded, and if defendant answers those questions under oath, on the record, and in the presence of counsel (if any), defendant's answers may later be used against defendant in a prosecution for perjury or false statement. The defendant also understands that defendant will be adjudicated guilty of the offenses to which defendant has pleaded and, if any of such offenses are

Defendant's Initials _SC_                    10

felonies, may thereby be deprived of certain rights, such as the right to vote, to hold public office, to serve on a jury, or to have possession of firearms.

11.   <u>Factual Basis</u>

Defendant is pleading guilty because defendant is in fact guilty. The defendant certifies that defendant does hereby admit that the facts set forth in the attached "Factual Basis," which is incorporated herein by reference, are true, and were this case to go to trial, the United States would be able to prove those specific facts and others beyond a reasonable doubt.

12.   <u>Entire Agreement</u>

This plea agreement constitutes the entire agreement between the government and the defendant with respect to the aforementioned guilty plea and no other promises, agreements, or representations exist or have been made to the defendant or defendant's attorney with regard to such guilty plea.

Defendant's Initials  _SC_                     11

13.   Certification

The defendant and defendant's counsel certify that this plea agreement has been read in its entirety by (or has been read to) the defendant and that defendant fully understands its terms.

DATED this _29th_ day of _APRIL_____, 2021.

KARIN HOPPMANN
Acting United States Attorney

_____
STACY R. CARUVANA
Defendant

_____
Chauncey A. Bratt
Assistant United States Attorney

_____
Robert L. Tarver Jr., Esq.
Attorney for Defendant

for Roger B. Handberg
Assistant United States Attorney
Chief, Orlando Division

Defendant's Initials _____                    12

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

UNITED STATES OF AMERICA

v.                                    CASE No. 6:20-cr-114-Orl-41LRH

STACY R. CARUVANA

### FACTUAL BASIS

Between 2018 and 2019, STACY R. CARUVANA, a resident of
Rockledge, FL, who was going through a divorce with NASA employee A.C.,
attempted to frame A.C. for harassing her and threatening to kill her. During
the course of doing so, CARUVANA altered and falsified emails purporting to
be from A.C.'s NASA email account and CARUVANA provided these emails
and other false statements to a NASA law enforcement agent.

*Background*

On May 29, 2018, the NASA Office of Inspector General (OIG),
Kennedy Space Center (KSC) Resident Agency, received an anonymous letter
regarding A.C., a NASA civil servant who had been working at KSC since
October 2006. The letter alleged, among other things, that A.C. was using
narcotics, possessing child pornography, engaging in domestic violence, and
misusing government resources. An OIG Special Agent (the "OIG Special
Agent") was assigned to investigate the allegations in this letter.

Defendant's Initials ___S.C.___          13

On October 16, 2018, the OIG Special Agent received a telephone call from Rockledge resident STACY R. CARUVANA ("CARUVANA"), who informed him that an arrest warrant had been issued for A.C. in Ocean County, New Jersey, on October 15, 2018, for threats and stalking. Later that day, CARUVANA sent an email attaching documentation showing that A.C. had been indicted in New Jersey for threatening to kill CARUVANA, and that a temporary restraining order had been issued against A.C. CARUVANA also attached documentation showing that she had certified to the State of New Jersey, under penalty of perjury, that A.C. had sent her a series of text messages from a cellular telephone number ending in 7505 to her cellular telephone number ending in 4536, from August 25 to August 31, 2018, threatening to kill her. For example, CARUVANA alleged that A.C. had texted her the following:

- "WHEN I GET MY HANDS AROUND UR NECK, IT WILL B TO CHOKE THE LIFE OUT OF U! WATCH YOUR ASS CUNT;"
- "I'M COMING FOR YOU DUMB BITCH. U WILL BE DEAD BEFORE SUNDAY. WE WILL MAKE SURE UR NEVER FOUND;" and
- "I CAN'T WAIT TO SEE YOUR LIFELESS BODY SOILED IN CUM DUMPED IN THE HUDSON."

Defendant's Initials ___ 𝒮𝒞          14

CARUVANA provided to the Ocean County authorities copies of the texts that she had received at her number ending in 4536 and attested that these were from A.C.

On October 18, 2018, the OIG Special Agent confirmed the existence of the outstanding New Jersey extradition warrant.  On the same date, the OIG Special Agent located A.C. and took him into custody without incident on the New Jersey warrant.  A.C. was then transported to the Brevard County Jail, Florida, to commence extradition proceedings to Ocean County, New Jersey. A.C. was then transferred to New Jersey for proceedings there, where he was released on bond on November 9, 2018.  A.C. was in custody for a total of 23 days.

*Falsified Emails Submitted by CARUVANA to NASA OIG*

Also on October 18, 2018, the OIG Special Agent contacted CARUVANA to inform her that A.C. had been arrested on the outstanding Ocean County, New Jersey arrest warrant. At this time, he requested that CARUVANA provide him with any threatening communications she had received from A.C.'s official government email account to assist in the underlying administrative NASA OIG investigation.

On October 30, 2018, CARUVANA sent to the OIG Special Agent twenty-eight emails that purportedly originated from A.C.'s NASA email

Defendant's Initials _C C_               15

account.  One of these purported emails that CARUVANA forwarded, which

contained the subject line "Fw: [Contains offensive language] Re: Revised

House Use Agreement and AT&T Internet Cancellation Information,"

indicated in the heading that it had been sent by A.C. to CARUVANA on

June 23, 2011, and stated as follows:

> I'm not messing with you anymore. So, you can agree to
> maintain the pool and the lawn and blow me or I will evict your
> stupid ass!  Also, if you determine it is not in your best interests
> to sign the document, I will be turning off the electric, DTV,
> etc.  Your call. You knew you stupid cunt I only used you. I told
> you that my life, liberty and pursuit for happiness will not be
> halted due to a cunt like you!

> In fact, as the OIG Special Agent later discovered, CARUVANA

had altered the text of the email prior to sending it to NASA OIG.

NASA server records showed that the actual email sent from A.C. to

CARUVANA on that date stated as follows:

> I go over there yesterday to fix a sprinkler head and all you
> want to do is argue. Therefore, I would rather not come
> around at all; Please find attached the revised agreement
> for our amicable parting of ways; Please sign and return to
> me; Also, I have cancelled the AT&T DSL Internet
> service. AT&T stinks anyway and you already have Bright
> house. If you want to package up the modem, I will return
> it to Wal-Mart and give you your $50.00 back. If you
> would like for me to do this, have the modem boxed up
> and the attached letter signed and I will pick it up after

Defendant's Initials           16

work tomorrow (June 24). Please let me know if this will
work for you. Thanks.

Moreover, the original June 23, 2011, email thread between
CARUVANA and A.C. contained vulgar language sent by
CARUVANA to A.C. that CARUVANA deleted from the email
thread that she forwarded to the OIG Special Agent.

Another of the emails forwarded to the OIG Special Agent by
CARUVANA on October 30, 2018, purportedly sent from A.C.'s
NASA email account to CARUVANA on September 27, 2018, read as
follows:

> Subject: fu bitch
> Asshole, you missed mediation and I don't give a fuck about your
> NJ restraining order! They can't touch me, you have no evidence
> and you will get nothing! You are paying for the meeting you no
> showed for you stupid bitch!

As NASA OIG later discovered, A.C. did not send this email to
CARUVANA. Rather, CARUVANA falsified this email and made it
appear like it was an email that had been sent from A.C.'s NASA email
account, when in fact A.C. had sent CARUVANA no such email.

On November 14, 2018, prior to the OIG Special Agent's discovery that
the above emails were falsified, a NASA KSC Threat Assessment meeting was
held regarding A.C. Based upon the significance of the pending charges

Defendant's Initials _____SC_____        17

against A.C. in Ocean County, New Jersey, and the email communications received from CARUVANA, which appeared to have been sent from A.C.'s official government email account, A.C. was issued a Notice of Proposed Removal on November 20, 2018, regarding his NASA civil servant position. NASA placed A.C. on administrative leave on November 21, 2018, and he was unable to return to work until December 9, 2018, when NASA OIG discovered that the allegations against him appeared to be false.

On December 4, 2018, CARUVANA sent to the OIG Special Agent screen shots from her cellular telephone of some of the threatening text messages that she received from the phone number ending in 7505, which she claimed were sent by A.C. One of these text messages stated "I'm getting to u tonight."

*NASA OIG's Discovery of Fabricated Nature of Emails and Text Messages*

On December 6, 2018, the OIG Special Agent received and reviewed the original email communications for A.C.'s NASA email account. At this time, the OIG Special Agent discovered that the concerning emails purportedly originating from A.C.'s NASA email account that were sent to him by CARUVANA were fabricated.

NASA OIG also obtained cell records showing that A.C. used a cellular telephone number ending in 9294, not the number ending in 7505. NASA

Defendant's Initials _____     18

OIG obtained records for A.C.'s credit card, as well as cell cite records for the telephone numbers ending in 9294 and 7505, which provided evidence that at the time of the alleged threats, A.C. was in a different location than the individual who was using the phone number ending in 7505. For instance, during part of the relevant time period, A.C. was in Florida, whereas whomever was using the cell phone ending in 7505 was connecting with a cell tower near the residence of CARUVANA's parents' residence in New Jersey, which is where CARUVANA was staying at the time.

A comparison of the cell records for the number ending in 7505 (the number that sent the threatening texts) and the phone number ending in 4536 (CARUVANA's phone to which the threatening text were sent) showed that during the entirety of the week-long time period during which the threatening text messages were being sent, both of these phone numbers were connecting with the same cell towers in the vicinity of CARUVANA's parents' home in New Jersey, where CARUVANA was then staying.

*Additional False Statements by CARUVANA / Interview by NASA OIG*

On May 28, 2019, CARUVANA sent an email to the OIG Special Agent stating the following: "[A.C.] just called me from a scrambled type of number to tell me and I quote 'You get NOTHING BITCH and I'm going to kill you'. He hung up and I called the PD immediately they are on their way."

Defendant's Initials _____        19

On May 30, 2019, CARUVANA sent an email and text message to the OIG Special Agent in which she accused A.C. of calling and harassing her multiple times during the previous night and morning.

Later on May 30, 2019, NASA OIG agents executed a search warrant at CARUVANA's residence in Rockledge, FL, at which time they conducted a recorded interview of CARUVANA. During the interview, CARUVANA initially maintained that A.C. had been threatening her, but ultimately admitted that the threats had been fabricated. CARUVANA claimed that the idea to fabricate the threats and get A.C. in trouble had been the idea of a boyfriend of CARUVANA. CARUVANA claimed, for instance, that this boyfriend assisted her in setting up the telephone account for the cellular telephone with the number ending in 7505. CARUVANA stated that she subsequently threw that telephone in the garbage. CARUVANA further admitted that the email that she sent to the OIG Special Agent on May 28, 2019, in which she claimed that A.C. called and threatened her that night using a scrambled number, was false.

NASA OIG recovered evidence from a computer at CARUVANA's residence indicating that CARUVANA was the one who sent the fabricated emails to NASA OIG on October 30, 2018 from her residence in Rockledge,

Defendant's Initials ___SC___          20

Florida, and that she had prepared several drafts of one of the fabricated emails prior to sending it to NASA OIG.

Rockledge is in Brevard County, Florida, which is in the Middle District of Florida.  NASA OIG is a federal agency.

Defendant's Initials _____ 21